UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT J. RALPH,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
                                /

Case No. 1:15-cv-90

HON. JANET T. NEFF

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Robert J. Ralph seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide

questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 35 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 24). He completed high school and was previously employed as a deli slicer and stock selector. (Tr. 39, 53–54). Plaintiff applied for benefits on January 3, 2012, alleging that he had been

disabled since December 15, 2011,[1] due to scoliosis, back pain, and a learning disability. (Tr. 61, 161–75). Plaintiff's applications were denied on April 3, 2012, after which time he requested a hearing before an ALJ. (Tr. 87–88, 93–98). On July 25, 2013, Plaintiff appeared with his counsel before ALJ Janet Alaga-Gadigan for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (Tr. 30–60). In a written decision dated August 30, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 11–29). Thereafter, the Appeals Council declined to review the ALJ's determination, making it the Commissioner's final decision in the matter. (Tr. 1–6). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§

---

[1] At the administrative hearing, Plaintiff amended the onset date to December 12, 2011. (Tr. 35).

[2]

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

3

404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Alaga-Gadigan determined Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 16). At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) obesity; (2) scoliosis; 3) degenerative disc disease of the lumbar spine; and (4) mental retardation.[3] At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 17–19). At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can never push or pull with the lower extremities, never operate foot controls, never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, can occasionally stoop, crouch and kneel, and can frequently balance. However, the claimant can never crawl. The claimant must avoid all exposure to hazardous machinery and unprotected heights. Additionally, the claimant's work is limited to unskilled

---

[3] Shortly before the ALJ's decision in this matter, the Commissioner modified Listing 12.05 to replace the phrase "mental retardation" with "intellectual disability." 78 Fed. Reg. 46,499 (August 1, 2013) (codified at 20 C.F.R. pts. 404 and 416). The Court hereafter uses the new phrase.

4

> jobs as defined in the DOT with specific vocational preparation levels 1 or 2, with simple routine tasks that involve no production rate work.

(Tr. 19). The ALJ also found at the fourth step that Plaintiff could not perform any of his past relevant work. (Tr. 23).

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 73,500 jobs in the state of Michigan which an individual similar to Plaintiff could perform. (Tr. 56). These included the positions of housekeeper, hand packager, hand assembler, and inspector/sorter. (Tr. 56). This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988). Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from December 12, 2011, (the alleged onset date) through August 30, 2013, (the date of the decision). (Tr. 25).

## DISCUSSION

Plaintiff's Statement of Errors raises the following claims.

1. The ALJ committed reversible error by finding that Plaintiff met (sic) Medical-Vocational Listing 12.05.

2. The ALJ committed reversible error by improperly weighing the evidence.

3. The ALJ committed reversible error by relying on improper boilerplate language to support her decision.

(Dkt. #11, PageID 408). The Court will discuss the issues below.

1. **Listing 12.05(c).**

Plaintiff first argues that he meets the criteria of Listing 12.05(c) in the Listing of Impairments and should therefore be determined to be disabled. The Court disagrees.

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). *See, e.g., Thacker v. Soc. Sec. Admin.*, 93 F. App. 725, 728 (6th Cir. 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency").

The medical criteria for a listing, i.e., the inability to perform "gainful activity," presents a higher level of severity than the statutory standard, i.e., the inability to perform "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry

unnecessary." *Id.* Consequently, when a claimant successfully demonstrates that he meets a listed impairment, the Commissioner will find the claimant disabled without considering his age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

Listing 12.05 provides in pertinent part as follows:

> Intellectual Disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied ....
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 CFR Pt. 404, Subpt. P, App. 1, Listing 12.05.

A Social Security claimant will meet the listing for intellectual disability only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria ...." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (quoting 20 C.F.R. Pt. 404, Subpt. P, Appl 1 § 12.00(A)) (brackets in original). A claimant "must make three showings to satisfy Listing 12.05(c): (1) he experiences 'significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period' (i.e., the diagnostic description); (2) he has a 'valid verbal, performance, or full scale IQ of 60 through 70'; and (3) he suffers from 'a physical or other mental impairment imposing an additional and significant work-related limitation of function.'" *West v. Comm'r of Soc. Sec.*, 240 F. App. 692, 697–698 (6th Cir. 2007), citing 20 CFR Pt. 404, Subpt. P, App. 1, Listing 12.05.

The record reflects that Plaintiff has met the requirement in 12.05(c) of "[a] valid verbal, performance, or full scale IQ of 60 through 70," and that he suffers from a "physical or other mental impairment imposing an additional and significant work-related limitation of function." In February 2012, Plaintiff's testing revealed a full scale IQ of 61. (Tr. 316). Later that year in December 2012, Plaintiff's testing revealed a full scale IQ of 60 (Tr. 344). The ALJ also noted Plaintiff's additional severe impairments of obesity, scoliosis, and degenerative disc disease of the lumbar spine satisfied the second prong listed in *West*. (Tr. 18).

While conceding Plaintiff met two of the three prongs to satisfy Listing 12.05(c), the ALJ concluded that Plaintiff did not satisfy all elements of the Listing because:

> [A]lthough the claimant has been alternately diagnosed with mild mental retardation, learning disability and cognitive impairment, his adaptive functioning demonstrates that his mental impairment is not to the level contemplated by Listing 12.05. He is able to care for himself, and spent 10 years working at a job at which he had various duties, including unloading trucks, frying foods, stocking shelves, and slicing meat with a meat slicing machine.

(Tr. 18).

The ALJ's determination that Plaintiff failed to present definitive evidence of deficits in adaptive functioning as required by Listing 12.05C is supported by substantial evidence. For purposes of this listing, "[a]daptive functioning includes a claimant's ffectiveness in areas such as social skills, communication, and daily living skills." *West*, 240 Fed. Appx. at 698, *citing Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993).

> [B]y definition, [intellectual disability] has its onset during a person's developmental period. [Intellectual disability], furthermore, results in deficits or impairments in adaptive functioning, that is to say, the person's effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence

> and social responsibility expected of his or her age by his or her cultural
> group.

*Heller*, 509 U.S. at 329 (internal quotation marks omitted). Plaintiff stated in his function report that he had "no problem" with his personal care. (Tr. 267). He did not need reminders with taking his medicine. (Tr. 268). He is able to prepare his own meals, do his laundry, and clean his room. He does not need help or encouragement in completing those activities. (Tr. 268). The record further reflects that Plaintiff was gainfully employed before the age of 22.[4] (Tr. 277). A claimant capable of performing such activities does not suffer from adaptive deficits. *See Harris v. Comm'r of Soc. Sec.*, 330 F. App'x 813, 815 (11th Cir. 2009); *see also Gulch v. Comm.*, No. 1:11–cv–21, 2012 WL 651731, at *7 (W.D. Mich. Feb. 28, 2012) ("[T]he fact that Plaintiff maintained employment throughout much of her adult life is inconsistent with the conclusion that she is [intellectually disabled]" and "indicates that Plaintiff did not experience deficiencies in adaptive functioning prior to age 22, or thereafter for that matter."). Plaintiff's burden at the judicial review stage is much higher than pointing to evidence on which the ALJ could have based a finding in his favor. He must show that the finding that the ALJ made is not supported by substantial evidence. *See Jones*, 336 F.3d at 477. Plaintiff has not satisfied that burden.

   2.   **Medical Opinions**

Plaintiff next claims that he is entitled to relief because the ALJ failed to properly assess the opinions expressed by Mr. Neil Reilly, M.A., and Dr. Richard King, Ed.D. Plaintiff

---

[4] To the extent Plaintiff argues this work was "sheltered employment," the argument is not supported by the record. *See* 20 C.F.R. §§ 404.1573(c), 416.973(c). The VE did not classify any of Plaintiff's past relevant work as sheltered employment. Plaintiff was not "essentially functionally illiterate." He had a limited education and was able to communicate in English. (Tr. 24). *See* 20 C.F.R. §§ 404.1564(b), 416.964(b); *see also Caudill v. Comm'r of Soc. Sec.*, 424 F. App'x 510, 514 (6th Cir. 2011).

9

further argues the ALJ erred in her treatment of Dr. Michael McCarthy, Ed.D., a state agency medical reviewer. The Court disagrees.

On February 28, 2008, Neil Reilly examined Plaintiff on referral from the state agency. Testing revealed a full scale IQ of 61. Mr. Reily concluded that the Plaintiff was "very weak in all areas measured and while he shows some ability to problem solve at a simple level his ability to retain information and process even simple information quickly is very poor." (Tr. 317). The opinion was also signed by Dr. James Lozer, Ed.D. On December 12, 2012, Plaintiff was evaluated by Dr. Richard King upon the request of Plaintiff's counsel. (Tr. 343). Testing revealed a full scale IQ of 60. (Tr. 344). Thus, Dr. King opined Plaintiff was markedly limited in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual, travel to unfamiliar places, or use public transportation. (Tr. 348–49). Dr. King concluded that Plaintiff would only be able to complete "[r]ather simple and routine jobs which can be learned through direct job placement." (Tr. 346).

The ALJ gave both opinions "limited weight" (Tr. 22–23). The ALJ noted that Mr. Reilly's opinion because it failed to take into account Plaintiff's "adaptive ability to maintain employment as a meat slicer for at least ten years." (Tr. 22). The ALJ similarly noted that Dr. King's opinion discounted Plaintiff's work history that required him to adapt to simple, routine work and was also inconsistent with his earlier conclusion that Plaintiff was "able to follow directions and instructions to the various testing tasks with no observed difficulty." (Tr. 22–23, 343).

It is clear the treating physician rule does not apply to these opinions. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). Because the opinions were not from a treating physician, the ALJ was not "under any special obligation to defer to [the] opinion[s] or to

explain why [s]he elected not to defer to [them]." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011); *see Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010); *see also Perry ex rel. G.D. v. Comm'r of Soc. Sec*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who ... have examined but not treated a claimant."). The ALJ carefully considered the opinions and determined that the extreme restrictions suggested were entitled to little weight. (Tr. 22–23). The ALJ's decision to give little weight to the opinions is supported by Plaintiff's testimony at the hearing in which he stated he completed a wide variety of tasks while at Meijer. (Tr. 41–46). Thus the ALJ's decision to give the opinions "little weight" is supported by substantial evidence.

Plaintiff claims, however, that the ALJ's treatment of the medical opinion evidence violates two separate aspects of the Sixth Circuit's decision in *Gayheart v. Commissioner of Social Security*, 710 F.3d 365 (6th Cir. 2013). Plaintiff first claims that the ALJ's decision violated *Gayheart* because the case held that an ALJ's reliance on the plaintiff's daily activities did not show plaintiff is disabled. This aspect of *Gayheart* is inapplicable here. In *Gayheart*, the court was discussing the ALJ's reliance on activities of daily living as a "good reason" to discount the opinion of the plaintiff's treating physicians. *Id.* at 377. That is not the case here where the opinions at issue were not rendered by treating physicians and the ALJ relied on Plaintiff's work history and the internal inconsistency of the opinions in giving them little weight. (Tr. 22–23).

Plaintiff also claims that the ALJ violated *Gayheart* by giving more weight to Dr. Michael McCarthy, Ed.D., who had not reviewed the complete medical record when he rendered his evaluation. "When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing

treatment," the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal citations and quotation marks omitted). Dr. McCarthy reviewed the record as of April 3, 2012. (Tr. 61–86). The record reflects that while the vast majority of the record was reviewed by Dr. McCarthy, Plaintiff did undergo further treatment. The record demonstrates, however, that the ALJ considered the latter additions including, for example, the opinion of Dr. King, which was rendered after the agency reviewer's evaluation. (Tr. 344–49). Accordingly, Plaintiff's claim lacks merit.

### 3. Credibility

Plaintiff finally argues that the ALJ's rationale for discounting his credibility is not supported by substantial evidence. As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical

12

>condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

In discounting Plaintiff's credibility, the ALJ concluded:

> [T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Tr. 18).

Plaintiff asserts that he is entitled to relief because the ALJ's reliance on "meaningless boilerplate clearly demonstrates that her opinion is not supported by substantial evidence." (Dkt. # 11, PageID 412). Plaintiff cites to *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), in which the Seventh Circuit criticized the use of similar language as "meaningless boilerplate." *Id.* at 645. As has been recognized, however, the shortcoming with the ALJ's decision that was at issue in *Bjornson* was that the ALJ in that case "used the boilerplate as [his] only statement about the claimant's credibility." *Johnson v. Comm'r of Soc. Sec.*, No. 1:12-cv-114, 2013 WL 1703894 at *4 (W.D. Mich. Apr.19, 2013). On the other hand, where such boilerplate is accompanied by appropriately detailed and focused analysis, the presence of the offending boilerplate does not constitute grounds for relief. *Id.* Here, the ALJ discussed the evidence of record at length and detailed her rationale for discounting Plaintiff's subjective allegations. (Tr. 18–22). The Court, therefore, rejects this argument.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.


Dated: January 6, 2016
　　　　　　　　　　　　　　　　/s/ Janet T. Neff
　　　　　　　　　　　　　　　　JANET T. NEFF
　　　　　　　　　　　　　　　　United States District Judge